Dennis G. EK; Cheryl A. Ek; Dennis C. Ek, Plaintiffs–Appellants,

v.

Stanley Dean HERRINGTON, Defendant,

and

David Hill; Dick Woodbury, Defendants–Appellees.

No. 90–35461.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1991.

Decided July 29, 1991.

John Mitchell, Coeur d'Alene, Idaho, for plaintiffs-appellants.

Randall R. Adams, Quane, Smith, Howard & Hull, Coeur d'Alene, Idaho, for defendant-appellee.

Before WIGGINS, BRUNETTI and NELSON, Circuit Judges.

WIGGINS, Circuit Judge:

The heirs of Marjorie A. Ek appeal the district court's entry of summary judgment against them in their wrongful death action against the alleged tortfeasor's employer. 738 F.Supp. 357. The alleged tortfeasor was an independent contractor. The district court had diversity jurisdiction, 28 U.S.C. § 1332, and the timely appeal is taken from a final order, 28 U.S.C. § 1291. Idaho law controls. We affirm.

## BACKGROUND

Defendant David Hill, who owns a logging operation in Idaho, hired Herrington as an independent contractor to haul logs from a place of logging to two mills. While en route to one of the mills in May 1988, carrying a load that was at least 10,000 pounds overweight, Herrington's truck drifted across the centerline as it gained speed at the bottom of a hill. The logs broke loose from the truck and landed on the Ek's vehicle, resulting in Mrs. Ek's death. All of Herrington's brakes were out of adjustment at the time.

The district court granted summary judgment in favor of Hill, holding that Ek was not in the class of persons (employees) protected by the Idaho Minimum Safety Standards and Practices for Logging ("Standards") promulgated by the Idaho

Industrial Commission, and that, under these circumstances, Hill could not be held vicariously liable for the injuries resulting from any negligence of his independent contractor.

## DISCUSSION

■ This court reviews a grant of summary judgment de novo. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ All parties in this case agree that Herrington was an independent contractor. Under the common law, as a general rule, an employer cannot be held liable for injuries caused by the negligence of an independent contractor. *Gates v. Pickett & Nelson Constr. Co.*, 91 Idaho 836, 432 P.2d 780, 786 (1967), *overruled on other grounds, Smith v. State*, 93 Idaho 795, 473 P.2d 937, 942 (1970); *Restatement (Second) of Torts* § 409 (1965). However, an employer may be held liable for the tort of an independent contractor if a regulation imposed a nondelegable duty on the employer to ensure that the standards of the regulation are met. *Id.* at § 424. Also, if the work involves "inherent dangers" or "peculiar risks," the employer may be liable for the failure of his independent contractor to take adequate precautions. *Id.* at §§ 413, 416, 427. The first question for the court is whether the Idaho Standards or federal regulations impose a duty on Hill, for the benefit of members of the general public, to inspect Herrington's brakes, and to prevent the overloading of Herrington's truck. If not, we must also decide whether, under Idaho tort law, Hill is liable for any failure of Herrington to

take adequate safety precautions that may have led to the injury in this case.

## I. IDAHO SAFETY STANDARDS

■ The appellants argue first that the Idaho Standards abrogate the common law rule shielding employers from liability for the torts of their independent contractors. If a statute or regulation imposes a duty on an employer to provide "specified safeguards or precautions for the safety of others," a court may hold that the employer "is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions." *Id.* at § 424. This duty can create liability for an employer in favor of only those persons whom the regulation is designed to protect. *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234, 1242 (1986).[1] Therefore, we must decide if Ek was in the class of persons the Idaho Safety Standards are intended to protect.

■ By their own terms, the Standards abolish the distinction between employers and independent contractors with respect to independent contractors' employees. An employer is defined as including

> the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed.

*Standards,* § 1.6. Consequently, in *Peone v. Regulus Stud Mills, Inc.*, 858 F.2d 550 (9th Cir.1988), the Ninth Circuit, applying Idaho law, held that the Standards protect not only a logging employer's employees, but also employees of independent contractors working for the employer. *Id.* at 554 ("Peone, as a logger, was 'a member of the class of persons the ... regulation was designed to protect.' ").[2] Nevertheless, to

1. Contrary to the appellants' suggestions, whether the plaintiff is in the class of protected persons is the threshold question of all statutory tort law, not just a component of negligence per se. *See Cooper v. Unimin Corp.*, 639 F.Supp. 1208, 1215 (D.Idaho 1986) ("It is fundamental

that in order for a statutory or regulatory provision to create a duty of care, the plaintiff must be within the class of persons that the statute or regulation was intended to protect.").

2. In answering other questions which we certified to the Idaho Supreme Court regarding the

say that the Standards create a duty in the employer to *the general public* for the negligence of independent contractors or their employees is a leap that we do not believe the Standards support and that we are not prepared to make.

Our reading of the Idaho Safety Standards persuades us that they provide a comprehensive set of regulations governing the obligations of an employer toward his employees. The Standard describing employers' general safety responsibilities begins as follows:

> a. Every employer shall furnish employment and maintain places of employment which are safe according to the standards as set forth herein.
>
> b. Every employer shall adopt and use practices, means, methods, operations and processes which are adequate to render such employment and place of employment safe. Every employer shall do every other thing necessary within the framework of this Code to protect the life and safety of employees.

*Standards*, chap. A., 3., Standard 3(a) and (b). These paragraphs emphasize an employer's duty to furnish safe employment for employees. The last phrase, "to protect the life and safety of employees," is repeated several times in succeeding paragraphs:

> d. No employer shall fail or neglect:
>
> .    .    .    .    .
>
> iii. To do every other thing necessary within the framework of this Code to protect the life and safety of employees.

Standard 3(d)(iii).

> g. No person shall fail or neglect to do everything necessary within the requirements of this Code to protect the life and safety of employees.

Standard 3(g).

> q. Management Responsibility:
>
> .    .    .    .    .

> iii. Every employer shall furnish employment which shall be safe for the employees therein and shall furnish such devices and safeguards and shall adopt and use such practices, means, methods, operation and processes as are adequate to render such employment and places of employment safe to protect the life and safety of employees.

Standard 3(q)(iii). Our reading of these sections in context simply provides no evidence that the Idaho Industrial Commission intended to create a duty in favor of the general public in the Standards. *Cf. Cooper*, 639 F.Supp. at 1215 (the Idaho Minimum Safety Act for Mining, "by its terms, was intended to protect the safety and health of mine *employees*"; emphasis in original). *But see Arrington v. Arrington Bros. Constr., Inc.*, 116 Idaho 887, 781 P.2d 224, 228 (1989) (holding that OSHA creates a duty that runs "to employees of other employers and," in dicta, "to anyone else whose presence on the site was reasonably foreseeable"). Absent further instruction from the Commission, the Idaho legislature, or the Idaho courts, we decline to hold that the Standards impose a duty on employers of independent contractors that clearly is not found at common law.

## II. FEDERAL MOTOR CARRIER REGULATIONS

■ The appellants next contend that federal motor carrier regulations, *see generally* 49 C.F.R. Part 390, create a duty for Hill that extends to members of the general public. We disagree. The regulations apply to employers "engaged in a business affecting interstate commerce who own[ ] or lease[ ] a commercial motor vehicle in connection with that business, or assign[ ] employees to operate it...." 49 C.F.R. § 390.5. Hill did not "own or lease" the commercial motor vehicle in the case. Herrington owned the truck. The regulations impose no safety inspection duties on Hill that extend to Herrington's truck.

*Peone* case, the Idaho court pointed out that the Standards may or may not create a duty in employers for the benefit of employees of the independent contractors, but that it had not been asked to decide that question. *Peone v.*

*Regulus Stud Mills, Inc.*, 113 Idaho 374, 744 P.2d 102, 103 (1987). Justice Bistline, dissenting, argued that the Standards do create a duty for employers that extends to the employees of independent contractors. *Id.* 744 P.2d at 113–15.

## III. NONDELEGABLE DUTY

■ Lastly, we address the appellants' argument that, under the common law, Hill is liable for Herrington's actions because Herrington was performing a nondelegable duty. Idaho has used the *Restatement (Second) of Torts* in developing its law regarding employer liability for independent contractors' torts. *See, e.g., Peone,* 744 P.2d at 106–107 (construing *Restatement* §§ 413, 416). Therefore, we consider the *Restatement*'s application to this case. The *Restatement* §§ 413, 416, and 427 describe exceptions to the general rule that employers are not liable for the torts of independent contractors. All three sections address the nondelegable duty employers have for work that involves unusual dangers inherent in the work.[3] These sections do not address ordinary dangers that are not special to the work at hand, and against which any careful contractor would take precautions. Rather, they address "special dangers to others which the employer knows or has reason to know to be inherent in or normal to the work." *Id.* at § 427; *see also* § 413 comment b, § 416 comments a, b.

Therefore, the threshold question for application of these exceptions to employer nonliability is whether the work poses a peculiar risk in its normal operation that must be countered with special precautions. This question is a question of fact for the jury, unless, viewing the facts in the light most favorable to the non-moving party in a summary judgment motion, the answer is clear as a matter of law. *See Fagundes v. State,* 116 Idaho 173, 774 P.2d 343, 348 (Idaho Ct.App.1989) (C.J. Walters, concurring and dissenting); *cf. Peone,* 744 P.2d at

106–07. Idaho has only two cases construing the peculiar risk exception. *See Fagundes,* 774 P.2d at 347–48 (holding that risk of crashing in wilderness area not peculiar to job which involves flying a helicopter over wilderness area); *Peone,* 744 P.2d at 107 (holding that the risk of falling dead trees does not pose a "peculiar risk" in logging).[4]

Driving a logging truck on steep mountain roads presents dangers that brakes will malfunction or that logs will fall off, as happened in this case. The *Restatement* suggests that the danger that brakes will malfunction is an ordinary one, requiring ordinary precautions, but that transporting several tons of logs poses peculiar risks that require special precautions in securing the logs:

> Thus if a contractor is employed to transport the employer's goods by truck over the public highway, the employer is not liable for the contractor's failure to inspect the brakes on his truck, or for his driving in excess of the speed limit, because the risk is in no way a peculiar one, and only an ordinary precaution is called for. But if the contractor is employed to transport giant logs weighing several tons over the highway, the employer will be subject to liability for the contractor's failure to take special precautions to anchor them on his trucks.

*Restatement* § 416, comment d. It is undisputed that the logging truck in this case was overloaded by at least 10,000 pounds under Idaho regulations and that the overload, combined with the defective brakes, caused the accident. However, there is no evidence that the manner of fastening the

---

**3.** The *Restatement* comments make it clear that these sections almost duplicate each other. § 413 comment a; § 416 comments a, b; § 427 comment a. Section 413 addresses the direct liability of employers for not requiring special precautions in their contracts with independent contractors. Sections 416 and 427 address the employers' vicarious liability for an independent contractor's failure to take those precautions, whether provided for in the contract or not.

**4.** *See also Castro v. State,* 114 Cal.App.3d 503, 511, 170 Cal.Rptr. 734, 738 (1981) (listing some of the risks that have been found to be "pecu-

liar" in California: "being struck by an automobile while eradicating traffic lines on a busy street.... being run over by dump trucks backing up.... [suffering] explosion while painting the inside of a tank with a volatile paint.... falling while working on a 10-foot high wall.... [suffering a] cave-in while working in a 14-foot deep trench...."; citations omitted); *Rooney v. United States,* 634 F.2d 1238, 1244 (9th Cir.1980) (holding that the risk of falling while painting 55-foot tall radomes is peculiar enough to make the employer vicariously liable).

logs was inadequate or that it contributed to the accident. Both of the investigating officers at the scene of the accident, Corporal Eric Mescher and Officer Steve Richardson, stated that they could not speculate whether the manner of fastening the logs contributed to the accident. *Ek v. Herrington*, No. 88–3074, Deposition of Cpl. Eric W. Mescher at 35–36 (D.Idaho July 13, 1989); *Id.*, Affidavit of Officer Steve Richardson at ¶ 7 (D.Idaho August 31, 1989). The plaintiffs offered no evidence that the manner of fastening the logs was defective and have not argued it in the district court or on appeal.

We accept the *Restatement*'s suggestion that the risk posed by malfunctioning brakes is an ordinary one that an employer of an independent contractor has no duty to provide against. Similarly, we hold that the risk posed by overloading a logging truck is not a peculiar risk that arises in the normal course of logging and for which special precautions must be taken. It is a risk that would not arise, but for the independent contractor's negligence, and which can be avoided by the ordinary precaution of not overloading the truck.[5] An employer of an independent contractor is justified in presuming that a careful contractor will not create that risk and, therefore, has no nondelegable duty to prevent it. The duty rests solely on the shoulders of the independent contractor.

Inasmuch as no other cause for the accident is argued by the plaintiffs, we hold that Hill had no duty to protect against either of the possible dangers, malfunctioning brakes and the spilling of overloaded logs, that may have caused the accident and Ek's death.

Summary judgment is AFFIRMED.

---

**5.** Comment d to *Restatement* § 427 says: [This Section] has no application where the negligence of the contractor creates a new risk, not inherent in the work itself or in the ordinary or prescribed way of doing it....